UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Marcus Sharod Rand,<br><br>Petitioner,<br><br>v.<br><br>J. Fikes,<br><br>Respondent. | Case No. 21-cv-1276 (JRT/JFD)<br><br>**REPORT AND RECOMMENDATION** |

This matter is before the Court on Marcus Sharod Rand's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. No. 1). The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the undersigned recommends that Rand's Petition be denied, as it is not ripe for adjudication and therefore does not present a "case or controversy" within the meaning of Article III of the U.S. Constitution.

## INTRODUCTION

On April 9, 2012, Marcus Sharod Rand ("Mr. Rand" or "Petitioner") was convicted in the United States District Court for the Western District of Michigan of Possession of Cocaine Base with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c). He was sentenced to 151 months' imprisonment. (Lee-Lo Decl. ¶ 4, Dkt. No. 10; Pet. ¶ 4 Dkt. No. 1.)  Mr. Rand is currently incarcerated in the Federal Correctional Institution in Sandstone, Minnesota. (Lee-Lo Decl. ¶ 5.) If Mr. Rand earned all the good time credits he

could (but not First Step Act ("FSA") Earned Time Credits, which are explained below, and which are at issue in this case), his release date would be July 26, 2022. (*Id*. ¶ 4.)

The main contention in Mr. Rand's Petition is that the Bureau of Prisons ("BOP") is refusing to properly credit him with Earned Time Credits ("Time Credits") pursuant to the FSA, Pub. L. No. 115-391, 132 Stat. 5194. He argues that the BOP is wrongly interpreting the FSA to allow it to wait until January 15, 2022 to award him any Time Credits (Pet. at 16); is wrongly limiting Time Credits he can earn under the FSA to credits attributable to programming to which he is assigned by the BOP, rather than additional programming of Mr. Rand's own choosing (Pet. at 24); and is wrongly interpreting the FSA to require him to accumulate 240 hours of Time Credits before the BOP will award him any Time Credits (Pet. at 31).

Mr. Rand states that under his interpretation of the FSA he has accumulated sufficient Time Credits through participating in prison programming and working at a prison job to reduce his sentence by 180 days, making him immediately eligible, indeed overdue, for transfer to a Residential Re-Entry Center. (Pet. at 13–14.) It is Mr. Rand's contention that he remains in prison only because the BOP has improperly interpreted the FSA and based on that incorrect interpretation, is refusing to properly account for Mr. Rand's Time Credits. (Pet. at 16.)

Respondent counters that because Congress gave the BOP discretion to wait until January 15, 2022 to award Time Credits, and the BOP has exercised that discretion, Mr. Rand's claim is not ripe for adjudication and should be dismissed. (Resp. to Pet. at 14–19, Dkt. No. 9.) On the merits, Respondent calculates that Mr. Rand has earned less than a day

2

of Time Credits. (*Id.* at 19–20.)

Mr. Rand's first two claims are inter-related, and both must be granted in order to accord him relief. This is because, from the Court's examination of the Respondent's Response and Mr. Rand's SENTRY data (Pet. Ex. 3 at 12), the BOP's position that Mr. Rand has currently accrued less than one day of Time Credits appears to be due to the BOP counting only programming to which it assigned Mr. Rand, while Mr. Rand's claim that he has earned 180 days of Time Credits will only be meritorious if the BOP awards him Time Credits for additional programming to which the BOP did not assign him. Additionally, Mr. Rand asserts he is due Time Credits for time spent at his prison food service job. Respondent does not discuss this claim. It will do Mr. Rand no good, in other words, to prevail on the question of when Time Credits are to be awarded, if he is going to be awarded less than one day.

Respondent is correct that Congress gave the BOP until January 15, 2022 to fully implement the FSA's Time Credit provisions. Therefore, even though the BOP has offered no explanation of why it is refusing to award Time Credits now, the Court must recommend dismissal of Rand's Petition.

## STATUTORY BACKGROUND

Signed into law on December 21, 2018, the FSA included a package of sentencing reforms, such as reduced mandatory minimum sentences for convictions of various federal crimes, and penological reforms, including the penological reform that is at the root of this case, reduction of the sentences of certain federal inmates through the accumulation of Earned Time Credits.

**Evidence-Based Recidivism Reduction Programming, Productive Activities, and Earned Time Credits**

Section 101 of the FSA, codified at 18 U.S.C. § 3632, directed the Attorney General, within 210 days of the law's enactment, to develop a risk and needs assessment system. The "risk" assessment part of the tool was to be suitable for classifying each inmate as having minimum, low, medium, or high risk of recidivating. 18 U.S.C. § 3632(a)(1). The "needs" assessment component of the tool was to be used to "determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly. . . ." 18 U.S.C. § 3632(a)(3). For successfully completing evidence-based recidivism reduction ("EBRR") programming or productive activities, eligible inmates can earn Time Credits. 18 U.S.C. § 3632(d)(4).[1] Inmates who are at recidivism risk levels medium or high earn Time Credits at a rate of 10 days of Time Credits for every 30 days of EBRR programming successfully completed,[2] while inmates at recidivism risk levels minimum or low earn Time Credits at a rate of 15 days for every 30 days of successfully completed EBRR programming or productive activities. 18 U.S.C. § 3632(d)(4)(A).

---

[1] Inmates may also earn other privileges through their participation in EBRR or productive activities, such as increased commissary, telephone, or email privileges, but those rewards are not at issue in this case, which concerns solely Time Credits. Those other rewards are described at 18 U.S.C. § 3632(d)(1)–(3).

[2] Inmates at recidivism risk levels medium or high are apparently not eligible to participate in productive activities. *See* 18 U.S.C. § 3635(5) (defining "productive activity" as "either a group or individual activity that is designed to allow prisoners determined as having a *minimum or low* risk of recidivating to remain productive and thereby maintain a minimum or low risk of recidivating. . . .") (emphasis added).

The FSA set limits on inmates' ability to earn Time Credits. Inmates whose crime of conviction is on a long list of federal offenses set out at 18 U.S.C. § 3632(d)(4)(D) are not eligible to earn Time Credits at all, and even those inmates who are eligible will not be granted Time Credits for any EBRR programming or productive activities completed before the effective date of the law or completed during any period of detention before their sentence commenced. 18 U.S.C. § 3632(d)(4)(B). Further, inmates will only earn credit for EBRR or productive activities they actually complete; an inmate will not earn Time Credits for EBRR in which they participate, but do not see through to the end. 18 U.S.C. § 3632(d)(4)(A) (rewards are for inmates who "successfully complete" EBRR or productive activities).[3] Finally, the BOP has promulgated proposed regulations which, if adopted, will even further limit inmates' ability to earn Time Credits. For example, inmates will only earn Time Credits for EBRR programming or productive activities to which the BOP has assigned them, after matching programming to the inmate's needs, as assessed by the BOP using the risk and assessment tool that Congress required the BOP to develop as part of the FSA. *See* 85 Fed. Reg. 75271 (proposed regulation 28 C.F.R. § 523.40(b)). The BOP also proposes to define a "day," for FSA purposes, as one 8-hour period of programming. *See* 85 Fed. Reg. 75272 (proposed regulation 28 C.F.R. § 523.42(b), (c)).

Congress directed that this system be implemented in phases and established deadlines for implementation of each phase. In phase one, as noted above, the FSA required the Attorney General, no later than 210 days following the statute's enactment, to develop

---

[3] The BOP also proposes to incorporate the successful completion requirement in a regulation. *See* 85 Fed. Reg. 75271 (proposed regulation 28 C.F.R. § 523.41(c)(1)).

and make public the risk and needs assessment system. Given the FSA's enactment date of December 21, 2019, that deadline was July 19, 2020. The Attorney General met this deadline. Press Release 19-784, U.S. Dep't of Justice, *Department of Justice Announces the Release of 3,100 Inmates Under First Step Act, Publishes Risk and Needs Assessment System*, available at https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and (last accessed Aug. 23, 2021).

In phase two, the FSA required the Attorney General, within 180 days from the development of the risk and needs assessment system, to actually use the system to complete an initial assessment of each BOP inmate's recidivism risk and programming needs. 18 U.S.C. §§ 3621(h)(1)(A) and 3632(a)(3) (BOP shall "determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly. . . ."). This step was completed on the deadline date, January 15, 2020. Press Release 20-37, U.S. Dep't of Justice, *Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation,* available at https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act (last accessed June 8, 2021).

Finally, in the third and last implementation segment, which is still ongoing, the Justice Department is to phase in the provision to all prisoners of EBRR programming and productive activities over a two-year span. 18 U.S.C. § 3621(h)(2). The two-year phase-in period will end on January 15, 2022. During the two-year phase-in, "the Bureau of Prisons

6

*may* begin to expand any evidence-based recidivism reduction programs and productive activities that exist at a prison as of such date, and *may* offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D." 18 U.S.C. § 3621(h)(4) (emphasis added).

### HOW THE BOP APPLIED ITS SYSTEM TO MR. RAND

According to the BOP, Mr. Rand is eligible to earn Time Credits under the FSA. (Lee-Lo Decl. ¶ 5.) The BOP found Mr. Rand has needs in the areas of Anger and Hostility; Family and Parenting; Finance and Poverty; Work; and Substance Abuse. (*Id*. ¶ 6.) Mr. Rand was initially classified as having a high risk of recidivism, while in three subsequent re-assessments he was classified at the medium risk level. (*Id.* ¶ 5.) As noted above, this means he can accumulate Time Credits at a rate of ten days for every thirty days of completed EBRR or productive activities but is not eligible for the additional five days of Time Credit per 30 days that is available to inmates classified as minimum or low risk.

Mr. Rand has completed two EBRR programs, one on money management and one on parenting skills. He is also currently attending an EBRR program on work skills and is waiting to begin an EBRR program on family and parenting. According to the BOP, he has completed 68 hours of approved programming, or 8.5 days, calculated at eight hours per day.[4]

---

[4] Although the FSA allows inmates to earn Time Credits at a rate of ten days of Time Credit for each 30 days of EBRR or productive activities completed, or a ratio of 1:3, the BOP claims Mr. Rand's 68 hours of programming lead to less than a day of Time Credit. This arithmetic is puzzling and is not explained in Respondent's submission to the Court.

## MR. RAND'S CONTENTIONS

Mr. Rand raises three grounds for relief in its petition. First, he disputes that the BOP may wait until January 15, 2022 before granting him Time Credits, saying that the BOP incorrectly interprets the FSA to allow the BOP to delay awarding Time Credit. Second, Mr. Rand takes issue with the BOP setting one FSA "day" of EBRR programming equal to eight program hours of programming, saying that is unreasonable in light of the realities of life in federal prison. Third, he argues that the BOP is incorrectly interpreting the FSA as limiting programming that qualifies for Time Credit to programming to which the BOP assigns an inmate. All three incorrect applications of the FSA, claims Mr. Rand, are unconstitutionally delaying his release from prison.

On November 23, 2020, Mr. Rand informed the Warden of FCI-Sandstone, Respondent Fikes, that Mr. Rand calculated he had earned between 120 and 150 days of Time Credits. If so, that would make Mr. Rand immediately eligible for transfer to a Residential Re-Entry Center. Mr. Rand asked the Warden to credit him with those Time Credits and release him to a Residential Re-Entry Center. (Dkt. No. 1-1 at 19.) The Warden responded:

> The First Step Act allows eligible inmates to earn additional time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities. As outlined in the First Step Act, "The Bureau of Prisons shall provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A)." As of January 15, 2020, the Bureau of Prisons completed the risk and needs assessment on each prisoner as outlined above. On November 8, 2019, a memorandum was issued identifying the initial evidence-based recidivism reduction programs and productive activities. The Bureau of Prisons is

8

> continuing to evaluate and approve additional programs. The Department of Justice and Federal Bureau of Prisons are reviewing the legislation and will implement all necessary steps to comply with this significant piece of legislation. As such, you are encouraged to maintain clear conduct and participate in recommended programs.
>
> In view of the above, this response to your request for Administrative Remedy is for informational purposes only.

(Dkt. No. 1-1 at 22.)

The Warden's answer was nonresponsive to Mr. Rand's contention that he should not be in prison at all, because he had accumulated sufficient Time Credits to allow his immediate transfer to an RRC. Mr. Rand appealed the Warden's decision through two additional levels of administrative review, the BOP's North Central Regional Office and the General Counsel of the BOP. Both responded word-for-word as the Warden had done. (Dkt. No. 1-1 at 25, 29.) Respondent does not claim that Mr. Rand has not exhausted his administrative remedies, and the Court therefore finds that administrative remedies have been exhausted.

## ANALYSIS

A court may grant habeas relief under 28 U.S.C. § 2241 to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction, *Matheny v. Morrison*, 307 F. 3d 709, 711 (8th Cir. 2002), including the computation of the sentence, *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973) (petitions seeking "immediate release or a speedier release from . . . confinement" are "the heart of habeas corpus"). As

9

noted above, Mr. Rand argues that what he claims is BOP's incorrect interpretation of the FSA is unconstitutionally delaying his release from confinement. This is a claim about the proper computation of Mr. Rand's sentence, and as such, it may be brought under § 2241.

### Whether the BOP Awards Time Credits During the Two-Year Phase-In Is a Matter of the BOP's Discretion

Mr. Rand's first claim for relief is the proper construction of the two-year phase-in Congress mandated for the full implementation of the FSA's recidivism reduction sections, and whether the BOP has discretion to wait until January 15, 2022 before awarding Time Credits to inmates. As described by 18 U.S.C. § 3621(h)(2):

> (2) Phase-in. . . so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need, and be reassessed for recidivism risk as necessary to effectively implement the system, the Bureau of Prisons shall –
>
>> (A) provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a needs and risks assessment for each prisoner under paragraph (1)(A); and
>>
>> (B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, while prisoners are participating in and completing evidence-based recidivism reduction programs and productive activities.
>
> (3) Priority during phase-in.--During the 2-year period described in paragraph (2)(A), the priority for such programs and activities shall be accorded based on a prisoner's proximity to release date.
>
> (4) Preliminary expansion of evidence-based recidivism reduction programs and authority to use incentives.--Beginning on the date of enactment of this subsection, the Bureau of Prisons *may* begin to expand any evidence-based recidivism reduction programs and productive activities that exist at a prison as of such date, and *may* offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in

10

subchapter D.

(Emphasis added.)

Two recent decisions issued in the District of Minnesota denied a § 2241 petition seeking immediate award of Time Credits. *Depoister v. Birkholz,* No. 21-cv-684 (ECT/BRT), 2021 WL 3492295, at *1 (D. Minn. Aug. 6, 2021); *Prince v. Fikes,* 21-cv-643 (MJD/BRT), 2021 WL 2942311 (D. Minn. June 16, 2021). The *Depoister* court held that because § 3621(2) states that the BOP is not required to offer incentives and rewards to inmates during the phase-in period, a § 2241 petition seeking immediate award of Time Credits was premature. The FSA's use of the word "may" implied the grant of some degree of discretion to the BOP. *Depoister,* 2021 WL 3492295, at *3.

The court's decision in *Depoister*, which dismissed a § 2241 petition because the Congressional use of "may" instead of "shall" was held to grant the BOP discretion as to the timing of the award of Time Credits (so long, of course, as the BOP does not go beyond January 15, 2022), is consistent with nearly every other court to have considered the FSA's award of Time Credits. *See, e.g., Holt v. Warden,* No. 4:20-CV-04064-RAL, 2021 WL 1925503, at *5 (D.S.D. May 13, 2021) ("Although the BOP is evading the spirit of a phase-in of FSA earned time credits, the language Congress chose gives the BOP discretion to determine whether to implement the incentives component during the phase-in period. Consequently, this Court concludes § 3621(h)(4) makes implementation of the FSA earned time credits permissible during the two-year phase-in period, not mandatory"); *Cohen v. United States,* No. 20-CV-10833 (JGK), 2021 WL 1549917, at *2 (S.D.N.Y. April 20, 2021) ("[T]he statute does not require the BOP to begin awarding [Time Credits] during

11

the phase-in period"); *Kennedy-Robey v. FCI-Pekin*, No. 20-cv-1371, 2021 WL 797516, at *2 (C.D. Ill. Mar. 2, 2021) ("The use of the word 'may' indicates that, while it is permissible for the BOP to award time credits under the statute at any time after the date of enactment, the BOP is not *required* to do so.") (emphasis in original); *Llewlyn v. Johns*, No. 5:20-cv-77, 2021 WL 535863, at *2 (S.D. Ga. Jan. 5, 2021) ("Because the First Step Act does not require actual implementation for each inmate until January 15, 2022, Llewlyn is not entitled to an order from this Court compelling the BOP to recalculate his time credits."). Because the BOP has exercised its discretion to not award Time Credits before January 15, 2022, those courts then dismissed the petitions on ripeness grounds. *See, e.g., Holt*, 2021 WL 1925503, at *6; *Cohen*, 2021 WL 1549917, at *3 ("[T]he petition is premature and the claim is not ripe."); *Kennedy-Robey*, 2021 WL 797516, at *2–3; *Llewlyn*, 2021 WL 535863, at *2 ("His petition is premature and his claim is not yet ripe."); *see also Herring v. M.V. Joseph*, No. 4:20cv249-TKW-HTC, 2020 WL 3642706, at *1 (N.D. Fla. July 6, 2020) (dismissing petition because "Petitioner has no current right to the relief requested in the petition since the Bureau of Prisons (BOP) has until January 15, 2022 to implement the provisions of the First Step Act on which the petition is based.").

One court has granted relief to a petitioner. In *Goodman v. Ortiz*, Civ. No. 20-7582, 2020 WL 5015613, at *6 (D.N.J. Aug. 25, 2020), the court held that "[t]he ordinary meaning of 'phase-in' combined with analysis of the statutory framework of § 3621(h) unambiguously supports the conclusion that the BOP must gradually implement the risk recidivism program, including the priority application of incentives to prisoners whose release dates are nearer, such as Petitioner," and ordered habeas relief. However, the

12

*Goodman* court said no more about the Congressional choice of "may" over "shall" than that this meant the statute did not contain any date by which "the BOP must apply a prisoner's earned credits from participation in recidivism reduction programs[;] it does require a 2-year phase-in, not only of participation in the programs, but of incentives for participation in the programs." *Id.* at *6. Other than later decisions from the District of New Jersey following *Goodman*—*Hare v. Ortiz*, Civ. No. 20-14093 (RMB), 2021 WL 391280 (D.N.J. Feb. 4, 2021); and *Gare v. Ortiz*, No. 20-cv-16416 (RMB), 2021 WL 571600, at *4 (D.N.J. Feb. 16, 2021)—there appear to be no other cases adopting the reasoning of the *Goodman* court.

"[W]hen interpreting a statute, it is well established that the court commences with the statute's plain language. Where the language is plain, the court need inquire no further." *Depoister*, 2021 WL 3492295, at *2 (cleaned up) (quoting *United States v. Cacioppo*, 460 F.3d 1012, 1016 (8th Cir. 2006)). "The word 'may,' when used in a statute, usually implies some degree of discretion." *Id.* at *3 (quoting *United States v. Rodgers*, 461 U.S. 677, 706 (1983)). Respondent asserts the BOP has discretion to award Time Credits any time between the date of the FSA's enactment, and the end of the two-year phase-in on January 15, 2022. (Resp. at 15.) This Court follows the overwhelming majority of the courts to have considered similar § 2241 claims and agrees with Respondent on that point.

### Because the BOP Has Not Made a Final Decision Regarding the Award of Time Credits to Mr. Rand, the Dispute Presented by His Petition is not Ripe for Adjudication

Because Congress gave the BOP discretion to wait to fully implement the FSA until January 15, 2022, and that implementation is ongoing, it follows that Mr. Rand's claims

13

are premature and must be denied.

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. One characteristic of a constitutionally-cognizable case or controversy is that it is "ripe" for adjudication. *See Poe v. Ullman*, 367 U.S. 497, 504 (1961); *Nebraska Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037 (8th Cir. 2000). The ripeness doctrine is meant to avoid having courts decide merely abstract or hypothetical disputes that have not yet "ripened" into a "a dispute definite or concrete, not hypothetical or abstract." *Nebraska Public Power*, 234 F.3d at 1038 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). The ripeness doctrine is rooted not only in Article III's limitation of federal court jurisdiction to cases or controversies, but also in "prudential considerations for refusing to exercise jurisdiction." *Id.* at 1037. In the context of a case like this one, in which a litigant asks a court to scrutinize an act of a federal agency, "it is fair to say that [the ripeness doctrine's] basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

Because Congress, in writing the FSA as it did, granted the BOP discretion whether or not to award Time Credits during the two-year phase-in, and because the BOP has exercised that discretion, the Court cannot characterize this dispute as ripe for adjudication.

It must therefore be denied, but without prejudice. Mr. Rand may urge his claims again on or after January 15, 2022.

However, this Court shares the concern of numerous other courts that the BOP does not give any reason why it is exercising its discretion so as to deny the award of Time Credits now. Under these circumstances, one feels sympathy for Petitioner's declaration that the BOP will not award Time Credits "because we don't have to!" (Reply at 30, Dkt. No. 16), and can be hard-pressed to disagree with the statement in *Holt* that although the BOP has discretion to delay the award of time credits, by doing so it is "evading the spirit of a phase-in of FSA earned time credits." 2021 WL 1925503, at *5. At least one other magistrate judge in the District of Minnesota has also noted the BOP's disinclination to explain why it is behaving as it is: "the Government's arguments here and in the cases facing similar time credits challenges indicates the same stance: the Government has until January 15, 2022 to fully implement this program and it intends to do so then and not any sooner." *Prince*, 2021 WL 2942311, at *3 n.3. The District Court adopted the report and recommendation issued in *Prince* except footnote 3, but the exception was made only because the bulk of footnote 3 addressed Petitioner's failure to exhaust administrative remedies. *Prince v. Fikes*, Civ. No. 21-643 (MJD/BRT), 2021 WL 2936656, at *1 (D. Minn. July 13, 2021). The District Court indicated it was not adopting footnote 3 because Petitioner had exhausted his remedies between the issuance of the report and recommendation and the order adopting it.

The BOP's overall approach to the award of Time Credits, described above, was applied in the particular case of Petitioner. The BOP and Mr. Rand are far apart on the

quantity of Time Credits he has accrued, but they agree he has earned some. In his Declaration, FCI-Sandstone Unit Manager Derrick Lee-Lo states that Mr. Rand has been assessed pursuant to the FSA, that his needs have been identified, and that he has taken, and successfully completed, at least some EBRR that addresses at least some of those identified needs. (Lee-Lo Decl. ¶¶ 7–10.) The BOP apparently will exercise its discretion to offer EBRR and productive activities, while simultaneously exercising its discretion not to award Time Credits until later for the successful completion of the EBRR and productive activities it offers. The BOP offers no compelling penological justification for withholding Time Credits from inmates who have successfully completed programming. In fact, it offers no justification at all for administering the FSA in this way. Nor does the BOP offer any support for the necessary implication of its position: that Congress intended to establish a two-year phase-in during which the BOP would offer EBRR and productive activities but would decline to award Time Credits for their successful completion.

However, Congress has granted the BOP discretion to decide when to award Time Credits, the BOP has exercised that discretion, and for purposes of the matter presently before the Court, that requires that Mr. Rand's Petition be denied.

**IT IS THEREFORE RECOMMENDED** that Mr. Rand's Petition (Dkt. No. 1) be **DENIED.**

Date: September 13, 2021           _s/ _John F. Docherty_
                                   John F. Docherty
                                   United States Magistrate Judge

## NOTICE

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within **fourteen** days. A party may respond to objections within **fourteen** days after being served a copy of the objections. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).